1

```
 1  UNITED STATES DISTRICT COURT

 2  EASTERN DISTRICT OF NEW YORK
    ---------------------------------------x
 3  CORA OXLEY,

 4                       Plaintiff,

 5         versus                                 18 cv 2374 (rjd)

 6  EXCELLENT HOME CARE SERVICES, LLC,
    RYVKIE GOLDBERGER, and DEVORA FRIEDMAN,
 7                                                U.S. Courthouse
                         Defendants.              Brooklyn, New York
 8  ---------------------------------------x
                                                  August 16, 2019
 9                                                11:30 a.m.

10

11        Transcript of Civil Cause for Pretrial Conference

12  Before:     HONORABLE RAYMOND J. DEARIE,
                              District Court Senior Judge
13

14                           APPEARANCES

15  Attorney for Plaintiff:
    ABDUL HASSAN LAW GROUP, PLLC
16  215-28 Hillside Avenue
    Queens Village, New York 11427
17  BY:  ABDUL K. HASSAN, ESQ.

18  Attorney for Defendant:
    BARRY R. FEERST AND ASSOCIATES
19  194 South 8th Street
    Brooklyn, New York 11211
20  BY:  EUGENE LYNCH, ESQ.

21  Official Court Reporter:
    MICHELE NARDONE, CSR
22  Phone:  718-613-2601
    Email:  Mishrpr@aol.com
23
    Proceedings recorded by mechanical stenography.  Transcript
24  produced by computer-aided transcription.

25
```

MICHELE NARDONE, CSR -- Official Court Reporter

Oxley v. Excellent

1          (In open court.)

2          THE CLERK:  We are on this morning for a pretrial

3   conference.  This is Oxley versus Excellent Home Care Services.

4   Docket number 18 CV 2374, assigned to Judge Dearie and

5   Magistrate Judge Pollak.

6          Can I ask the attorneys, please, to note their

7   appearance, beginning with counsel for the plaintiff.

8          MR. HASSAN:  Your Honor, Mr. Abdul Hassan for the

9   plaintiff.  Good morning.

10         THE COURT:  Good morning.

11         MR. LYNCH:  Barry R. Feerst, 194 South 8th Street,

12  Brooklyn, New York 11211, by Eugene Lynch, for the defendants.

13         THE COURT:  Mr. Lynch, good morning.  Welcome.

14         MR. LYNCH:  Good morning.

15         THE COURT:  I understand you have arrived at some sort

16  of a settlement.

17         MR. HASSAN:  Yes, Your Honor.  We have discussed this,

18  and we would like to put the settlement on the record.  It's

19  the defendant's preference that we do it this way, and then I

20  would like to make a quick motion explaining why it's a

21  reasonable settlement under Cheeks, for approval purposes.

22         THE COURT:  Well, I'm not going to approve it today,

23  but I'm happy to hear the terms.  I have a responsibility.  It

24  won't take me long.  Are you reducing it to writing, or are you

25  just going to put it on the record?

MICHELE NARDONE, CSR -- Official Court Reporter

1        MR. HASSAN:  Just put it on the record.

2        THE COURT:  All right.  Let's hear it.

3        MR. HASSAN:  Your Honor, so the plaintiff worked --
4 the settlement is for a gross amount of 19,500.

5        THE COURT:  One-nine?

6        MR. HASSAN:  Nine, one-nine, $19,500.

7        THE COURT:  Yes?

8        MR. HASSAN:  In terms of Cheeks, my firm will be
9 receiving reimbursement for $653 in costs, things like filing
10 fees, service of process.  There are three defendants in the
11 case.

12       Then we will be taking a reduced one-third contingency
13 fee of $6,282.  Our hourly fees in this case are over $22,000,
14 but, to facilitate the settlement, we agreed to take a reduced
15 fee in order to resolve the matter.

16       In terms of Cheeks, the settlement is fair because
17 there are significant disputes of law and fact.  As Your Honor
18 probably can recall, there was a motion for summary judgment.
19 The parties have appeared before Magistrate Judge Pollak a few
20 times for settlement conferences; and we were very, very far
21 apart.

22       The defendant claims that the plaintiff was paid for
23 all her time and that they have time records to back it up.  We
24 claim that the time records did not capture all the time the
25 plaintiff worked.  So, in that sense, there are legitimate and

MICHELE NARDONE, CSR -- Official Court Reporter

1  bona fide disputes.  If the jury believes the defendant, the
2  plaintiff will end up with nothing.  If they believe the
3  plaintiff, she will end up with more.  But, in light of those
4  risks and in order facilitate a compromise, the parties have
5  arrived at this number.
6        Let me mention in terms of the recovery.  If we assume
7  that the plaintiff was not paid for any of the additional time,
8  then her damages will be -- could be as much as hundreds of
9  thousands, theoretically.  If we assume that the wages paid to
10 the plaintiff was for all the hours worked, then the effective
11 regular rate would be lower, around $52; and, instead of being
12 owed one and a half times the regular rate for her claimed
13 unpaid hours, she would be owed half time the regular rate, or
14 about $26 an hour.  Using that approach for settlement
15 purposes, we would have theoretical claimed damages of about 6
16 to 7,000 for a six-year period; and then we will have about
17 15,000 in damages for the two-year recovery period under FLSA.
18       As we noted previously, the plaintiff's schedule was
19 reduced in around June of 2017, and she didn't work overtime
20 for the last year of her employment, the last six months or so.
21 I think she stopped working there in January of 2018.  So, in
22 light of the significant disputes of -- there is also an issue
23 of exemption, whether the plaintiff, because of her training
24 and the type of work she did, nursing-type work, whether she
25 would be exempt as well.  So, given the risk involved and given

MICHELE NARDONE, CSR -- Official Court Reporter

1  the disputes as to the hours worked, the settlement is fair
2  under Cheeks, for approval purposes.
3         And, in terms of the legal fees, we expended over
4  $20,000 in legal fees on this case.  There were lot of
5  conferences, there was even a motion for summary judgment; but
6  we have also significantly reduced our fees in order to attain
7  this settlement.  Under Cheeks, one-third fee is routinely
8  approved, even though there is no prohibition under Cheeks for
9  a fee greater than one-third.
10        And the Supreme Court, in a case called Venegas versus
11 Mitchell, has said that fees that a plaintiff owes to the
12 attorney is determined by the retainer agreement, as opposed to
13 fees the defendant may owe the plaintiff, which is determined
14 by fee-shifting jurisprudence.  However, in this situation,
15 because compromises were required on all sides, we reduced the
16 legal fees to one-third, after costs of $653.
17        The settlement does not contain any problematic
18 provisions, such as confidentiality and overbroad release.  It
19 would be a release the court could release -- a maximum release
20 the court could approve under Cheeks, which would be all the
21 wage and hour claims under FLSA and New York Labor Law and all
22 the claims asserted in this action.
23        So, for those reasons, the risk involved, the amount
24 in relation to the recovery, the fees being within the
25 one-third range, and the absence of any problematic provisions,

MICHELE NARDONE, CSR -- Official Court Reporter

1  such as confidential, non-disparagement and so on, we would
2  respectfully request that the court approve this settlement as
3  fair and reasonable under Cheeks.
4              THE COURT:  Mr. Lynch, do you want to add anything?
5              MR. LYNCH:  No, Your Honor.  The defense agrees.
6              MR. HASSAN:  Your Honor, one more term I forgot.  The
7  payment will be made within ten days of approval.
8              THE COURT:  Well, I'm hearing this for the first time.
9  On the face of it, it seems like a reasonable resolution.  It's
10 obviously something I want to take a day or two to digest, in
11 consultation with Judge Pollak; and you will hear from us, if
12 not -- well, what's today?  You will certainly hear from us
13 next week.  If we have any questions you will also hear from us
14 next week.
15             MR. HASSAN:  Yes, Your Honor.  Thank you.
16             THE COURT:  You are going to order this transcript?
17             MR. HASSAN:  Yes, yes, we will.
18             THE COURT:  So I get a copy.  Thank you.
19             MR. HASSAN:  Yes.  Thank you.  Your Honor.  Have a
20 good weekend.
21             THE COURT:  Have a good weekend.
22         (Pause.)
23             THE COURT:  Gentlemen, do you have an agreement that's
24 been written?
25             MR. HASSAN:  No, just what's been put on the record.

MICHELE NARDONE, CSR -- Official Court Reporter

1      MR. LYNCH:  No.

2      THE COURT:  So there has been no written agreement?

3      MR. LYNCH:  No.

4      MR. HASSAN:  No.

5      (End of proceedings.)

6                              o O o

7

8  Certified to be a true and accurate transcript.
   /s/ Michele Nardone
9  MICHELE NARDONE, CSR -- Official Court Reporter

MICHELE NARDONE, CSR -- Official Court Reporter